**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PATRICK EDWARD CAMASTA, )<br>individually and as the representative of a )<br>class of similarly-situated persons, )<br>    )<br>Plaintiffs, )<br>    )<br>v.    )<br>    )<br>JOS. A BANK CLOTHIERS, INC. a/k/a )<br>JOS. A. BANK, )<br>    )<br>Defendant. ) | Case No. 12 C 7782 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Patrick Edward Camasta ("Camasta") filed a complaint on behalf of himself and similarly situated Illinois consumers alleging that Defendant Jos. A. Bank Clothiers, Inc.'s ("JAB") violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and the Uniform Deceptive Trade Practices Act ("UDTPA"), 814 ILCS 510 *et seq*. (R. 23-1, Ex. A, Compl.) JAB removed this case to federal court on September 9, 2012, based on 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, as amended in relevant part by the Class Action Fairness Act of 2005. (R. 1, Notice of Removal.) Before the Court is JAB's motion to dismiss Camasta's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] (R. 22, Mot.) For the following reasons, the Court grants the motion.

---

[1] On February 6, 2013, the Court granted JAB's motion to file supplemental briefing in support of its motion to dismiss. (R. 32.) The Court gave Camasta until February 20, 2013 to respond to this supplement. *Id*. JAB's supplemental filing consisted of a case from a federal district court in New Jersey. (R. 30-1.) The Court did not need to review a response from Camasta before ruling on JAB's motion because it did not rely upon the supplemental briefing.

**BACKGROUND**

Plaintiff Patrick Camasta alleges the following facts, which the Court deems true for purposes of this motion.

On July 27, 2012, Camasta went to one of Defendant JAB's retail clothing stores in Deer Park, Illinois. (Compl. ¶ 11.) While at the store, Camasta saw an advertisement that certain shirts were on sale. (*Id.* ¶ 12.) Believing that JAB was selling the shirts at a reduced price, plaintiff purchased multiple shirts, paying a total of $178.69. (*Id.* ¶¶ 12, 13.) Specifically, Camasta bought one shirt for $87.50, and received two shirts for free, and paid $79.50 for another shirt and received two more free shirts. (R. 23-1, Ex. 1 at 15.)

At some point after July 27, 2012, Camasta "learned that the 'sale' was in fact not a temporary price reduction." (*Id.* ¶ 16.) Rather, JAB "advertise[d] the normal retail price as a temporary price reduction." (*Id.*) Had Camasta known that the advertised "sale" price was the normal retail price, he "would not have been induced to purchase, could have purchased for less than the amount paid, or could have gone to another retail store for a true 'sale' price of a comparable item." (*Id.* ¶¶ 35, 47) Instead, the advertised sale price induced Camasta to purchase items he would not have otherwise purchased and he did not receive the discount he expected. (*Id.* ¶¶ 36, 48.)

**LEGAL STANDARD**

**I.    Rule 12(b)(6)**

"A motion under Rule 12(b)(6) tets whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is

2

entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff may plead himself out of court by alleging facts showing that he has no legal claim. *See Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012); *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

II.     **Rule 9(b)**

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. See Fed. R. Civ. P. 9(b); *Pirelli*, 631 F.3d at 441-42. This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily

differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Pirelli*, 631 F.3d at 441-42. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," however. Fed. R. Civ. P. 9(b). "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli,* 631 F.3d at 441 (citation omitted).

## ANALYSIS

### I.     Heightened Pleading Standard

As a threshold matter, the Court must determine whether Rule 9(b)'s heightened pleading standard applies to Camasta's complaint. *See Pirelli*, 631 F.3d at 446 (Rule 9(b) imposes a higher pleading standard applicable to count averring fraud). Camasta argues that Rule 9(b) does not apply "[b]ecause neither fraud nor mistake is an element of unfair conduct under the ICFA." (R. 28, Resp. at 3.) Camasta, however, specifically alleges fraud in his allegations under both the ICFA and the UDTPA. *See id*. at 441 ("When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies."); s*ee also Telefonix, Inc. v. Response Engineering, Inc.,* No. 12 C 4362, 2012 WL 5499437, at *3 (N.D. Ill. Nov. 13, 2012) ("Rule 9(b)'s standard can apply to counts based on fraudulent conduct, not just counts of fraud."); *see also, RMB Fasteners, Ltd. v. Heads & Threads Intern., LLC,* No. 11 CV 02071, 2012 WL 401490, at *10 (N.D. Ill. Feb. 7, 2012) ("Rule 9(b)'s heightened pleading standard applies to averments of fraud, not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.") (citing *Borsellino v. Goldman Sachs Grp.*, *Inc*., 477 F.3d 502, 507 (7th Cir. 2007) (internal quotations omitted)). "Fraud includes anything calculated to deceive, whether it be a single act or combination of

circumstances, whether the suppression of truth or the suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture." *Strohmaier v. Yemm Chevrolet,* 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (citing *Regenold v. The Baby Fold, Inc.*, 68 Ill.2d 419, 435, 12 Ill. Dec. 151, 369 N.E.2d 858 (1977)). In fact, Camasta even describes JAB's actions as "fraudulent," "misleading," and constituting "consumer fraud." *See, e.g.,* ¶¶ 3, 16, 17, 21, 23, 24, 30, 37, 42); *see Sharkey v. NAC Marketing Co., LLC* , No. 12 C 4354, 2012 WL 5967409, at *7 (N.D. Ill. Nov. 28, 2012) ("Allegations of deceptive acts or practices [under the ICFA] are subject to Rule 9(b)'s heightened pleading requirement and therefore must be pled with particularity."). Because Camasta bases his claims on a "misleading and fraudulent sale technique," the complaint must meet the particularity requirements of Rule 9(b). *See id*. ¶ 23.[2]

## II. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

"The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 574 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Additionally, a private party, like Camasta, "must show 'actual damage' in order to maintain an action under the ICFA." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing 815 ILCS 505/10a); *see also People ex rel. Madigan v. United Const. of Am., Inc.,* No. 1-12-0308, 2012 WL 5911795, at *6 (Ill. App. Ct.

---

[2] Notably, even if the Court applied the ordinary Rule 8 pleading standards, the outcome would be the same based on the gaps in Camasta's complaint relating to personal harm, discussed below.

Nov. 20, 2012) ("Private individuals have standing to litigate a violation only if they have actual damages") (citing *Zekman v. Direct Am. Marketers, Inc.,* 182 Ill.2d 359, 373, 231 Ill. Dec. 80, 695 N.E.2d 853 (Ill. 1998). JAB argues that Camasta has not sufficiently plead any actual damage. (Mot. at 10-16.)

Specifically, JAB argues that Camasta's claim fails because he only alleges that he did not receive the type of discount he expected, which is not actual pecuniary harm. (*Id.*) Indeed, Camasta "does not allege that he believed the [] prices were unfair, excessive, or not a fair price to pay for the merchandise he received." (Mot. at 11.) According to JAB, two recent Illinois decisions – *Kim v. Carter's Inc*., 598 F.3d at 365 and *Mulligan v. QVC, Inc.*, 381 Ill. App. 3d 620, 626-27, 321 Ill. Dec. 257, 888 N.E.2d 1190 (Ill. App. Ct. 2008) – dictate that Camasta's allegations do not constitute actual harm under the ICFA. (Mot. at 11-12.)

In *Carter's Inc.,* the Seventh Circuit affirmed the trial court's dismissal of plaintiffs' ICFA allegations for failure to state a claim because the plaintiffs had not suffered any actual pecuniary harm. 598 F.3d at 365-66. In *Carter's Inc.*, the defendant clothing retailer listed "suggested prices" on its price tags and frequently advertised percentage discounts off those "suggested prices." *Id*. at 363. The plaintiffs argued that the "suggested prices" convinced customers that they were purchasing items at a significant discount even though the "suggested prices" were "fictitious" and "substantially higher" than what the products sold for on a regular basis. *Id*. The Seventh Circuit held that "it [was] not enough that [defendant's] price comparisons deceived the plaintiffs and induced them to buy defendant's clothing." *Id*. at 366. The Seventh Circuit specifically noted that the plaintiffs had not alleged that the clothing was defective or worth less than what the plaintiffs paid, or that plaintiffs "could have shopped

around and obtained a better price in the marketplace." *Id*. at 365. The court, therefore, concluded that the plaintiffs had received the benefit of their bargain and suffered no actual pecuniary harm. *Id*.

In *Carter's Inc*., the Seventh Circuit relied on *Mulligan* in reaching its conclusion. In *Mulligan*, a customer alleged that the defendant violated the ICFA by luring her into purchasing items by listing artificial retail values next to its sale prices. 382 Ill. App. 3d at 622-23. The Illinois Appellate Court concluded that she had not suffered actual damages because she "agreed to purchase . . . items for a certain price" and could not show "that the value of what she received was less than the value of what she was promised." *Id*. at 628. In fact, the plaintiff even admitted that she thought the prices she paid for the merchandise were fair. *Id*. at 622. Additionally, the *Mulligan* court explained that, even though the court could use the benefit-of-the-bargain rule to calculate damages, the plaintiff did not establish any actual damage that would warrant the calculation of damages. *Id*. at 627 ("Whereas damages are the recompense or compensation awarded for the damage suffered, damage is the loss, hurt, or harm which results from the injury.") The Court, therefore, upheld the lower court's entry of summary judgment in favor of the defendant retailer.

Here, like the plaintiffs in *Mulligan* and *Carter's Inc.*, Camasta alleges that JAB advertised false and misleading normal retail prices in order to make the "sale" prices appear to be significant discounts. Also, like the plaintiffs in *Mulligan* and *Carter's Inc.* Camasta does not allege that he paid an unfair price or more than the value of the shirts. Indeed, in his Response, Camasta provides a table purporting to show the "actual average retail price" per shirt which indicates that he paid the exact retail price for each shirt and therefore had an "actual saving" of

7

0%. (Resp. at 3.) This table "merely attempts to assign a dollar value to [Camasta's] defeated expectations about the degree to which his purchase of shirts from JAB was discounted." (Reply at 7.) It does not indicate that Camasta paid more than the value of the shirts.

Camasta specifically argues that his complaint sufficiently alleges that JAB caused him to pay more than the value of the property because he has alleged that "[b]ut for the advertised and promoted sales price [he] would not have bought the shirts." (Resp. at 6, 7 (citing Compl. ¶ 14).) He further argues that, if JAB had actually represented the retail price, he could have utilized that information to seek out a "true 'sale' price of a comparable item" at another retail store. (*Id*. (citing Compl. ¶¶ 35, 47).) Specifically, he states that he "was damaged – and is owed – the 66.67% savings [he] was promised but not given." (*Id*.) Camasta, therefore, did plead that he "could have shopped around and obtained a better price in the marketplace," unlike the plaintiff in *Carter's Inc.* 598 F.3d at 365. This allegation, however, does not save Camasta's complaint as, even viewing the facts in the light most favorable to Camasta, he has pled, at most, that he may have received some or greater savings at an alternate retail store. He has not pled facts to show that he did not receive the benefit of the bargain or that he paid more than the value of the merchandise.

Camasta does assert a vague allegation that JAB "caused substantial injury to the Class" by causing them to "pay[] too much for the items purchased." (Compl. ¶ 36.) This allegation, however, is not sufficient to withstand dismissal. First, Camasta does not allege that he, rather than the class, suffered this injury of paying "too much." *See, e.g., Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727, at *5 (N.D. Ill. Oct. 18, 2012) ("[Plaintiff] cannot attain standing to seek equitable relief based on the harms that may occur to potential members of an alleged class

that has not been certified and may never be.") (citing *Campell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004) (holding that where a district court has yet to certify a class, plaintiff may not rely on "the prospect that other arrested persons may be subjected" to the same treatment he is now challenging as unconstitutional); *Yachnin v. Village of Libertyville*, 803 F. Supp. 2d 844, 850 (N.D. Ill. 2011) (refusing to allow defendant, for purposes of standing, to represent all persons arrested or all persons who may be arrested in the future pursuant to a particular policy, when the class was not yet certified). Second, even making all inferences in Camasta's favor, this conclusory allegation, supported by no facts, does not support a plausible, not merely speculative, claim that Camasta paid more than the shirt's value, rather than merely paying closer to the retail value than he believed. Indeed, Camasta's Response brief does not even cite to this vague allegation as the source of his damages, fatally arguing instead that he lost the benefit of his bargain by not receiving the level of discount he expected. (*See* Resp. at 5-7.)

The courts in *Mulligan*[3] and *Carter's Inc.* specifically rejected Camasta's argument that a customer experiences actual damage when he does not receive as much of a discount as expected based on the defendant retailer's representations. Camasta's ICFA claim, therefore, fails because Camasta has pled no harm other than his defeated expectation, which does not constitute actual harm under the ICFA. *See, e.g., Carter's Inc.*, 598 F.3d at 366 ("To sustain their private ICFA action, the plaintiffs must sufficiently allege actual damages, which, we conclude, they have failed to do.").

---

[3] In *Mulligan*, this issue arose in the context of summary judgment, meaning that the court had a factual record to review. This fact does not change the analysis here as Camasta has not include allegations that would constitute actual pecuniary harm under any factual record.

**III.    The Illinois Uniform Deceptive Trade Practices Act ("UDTPA")**

Camasta alleges that JAB violated the Illinois Uniform Deceptive Trade Practice Act, which states, in relevant part, that a company engages in deceptive trade practice when it "makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," or "engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(11)-(12); (*see* Compl. ¶¶ 44-45.) For these alleged violations, Camasta seeks actual and punitive damages as well as injunctive relief.

First, the UDTPA does not support a claim for actual or punitive damages. Rather, "the only remedy under the Uniform Deceptive Trade Practices Act is injunctive relief." *Vara v. Polatsek*, No. 1-11-2504, 2012 WL 6962887, at*13 (Ill. App. Ct. Oct. 5, 2012) (citing 815 ILCS 510/3 (West 2006)); *see also Glazewski v. Coronet Insurance Co.,* 108 Ill.2d 243, 251-52, 91 Ill. Dec. 628, 483 N.E.2d 1263 (Ill. 1985) (finding that a plaintiff could not recover damages under the Illinois Uniform Deceptive Trade Practices Act). Camasta, therefore, may not pursue actual or punitive damages under Count II.

Second, Camasta fails to sufficiently allege that JAB will likely harm him in the future, as required to support a claim for injunctive relief under the UDTPA. *See Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.* 392 Ill. App. 3d 1, 9, 857, 330 Ill. Dec. 826, 909 N.E.2d 848 (Ill. App. Ct. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future.") (citing *Tarin v. Pellonari*, 253 Ill. App. 3d 542, 553, 192 Ill. Dec. 584, 625 N.E.2d 739 (Ill. App. Ct. 1993)). Furthermore, Camasta lacks Article III standing to seek injunctive relief as he has not shown a "real and immediate danger that the alleged harm

will occur" in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ("past exposure to illegal conduct does not in itself show a present case for injunctive relief"); *see also Scherr v. Marriott Int'l., Inc.*, — F.3d —, No. 11-3833, 2013 WL 57857, at *3 (7th Cir. Jan. 7, 2013) (stating that "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights").

Camasta misguidedly argues that he has alleged future damages sufficient to establish standing for injunctive relief because (1) he has alleged that "there is a substantial danger that these wrongful retail practices will continue" (Compl. ¶¶ 38, 49); and (2) he can plead on behalf of the proposed class to protect them from future harm. (Resp. at 11.) First, although Camasta has alleged that a "danger" exists that the practices will continue, he has not alleged that he personally will experience any harm in the future. *See, e.g., Campell,* 373 F.3d at 836 ("Unless the same events are likely to happen again to him there is no controversy between him and [the defendant[.]"). Rather, at most, Camasta has alleged that JAB harmed him in the past, which is not sufficient to establish standing for injunctive relief.); *see also O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.[.]"). Indeed, for JAB to harm Camasta in the future, JAB would need to advertise a fictitious retail price, which Camasta sees, and which induces Camasta to purchase merchandise, despite Camasta's awareness of JAB's alleged pricing practices. Not only did Camasta fail to allege such a possible chain of events, but such allegations would be highly speculative and too attenuated to establish standing. *See e.g.*, *id*. at 495-96 (finding a plaintiff lacks standing when the "prospect of future injury rests

on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners"); *see also Jimenez v. Waller*, 2012 WL 6644065 (finding that the plaintiff lacked standing to seek injunctive relief because any possibility that the defendant would harm her in the future depended on mere speculation about unforeseeable events); *Taylor v. Stewart*, 479 Fed. Appx. 10, 13 (7th Cir. 2012) (finding that the plaintiff "lacks standing to seek injunctive relief because he cannot show 'a reasonable probability' of imminent, tangible harm").

Second, as discussed above, Camasta cannot establish standing based solely upon harms to the class members that do not establish a claim for relief personally. *See, e.g., Campell*, 373 F.3d at 836 (finding that plaintiff could not "rely on the prospect that other [] persons" may be subjected to the practices at issue to establish standing). Camasta relies on *Santiago v . RadioShack Corp.*, No. 11 C 3508, 2012 WL 934524, at * 4 (N.D. Ill. Fed. 10, 2012), for the proposition that he may rely on the future injuries of potential class members to establish standing. (Resp. at 11-12.) In *Santiago*, the court held that striking a request for injunctive relief was premature. 2012 WL 934524 at *4. Unlike here, the *Santiago* court did not face the question of whether the individual plaintiffs had established standing to pursue a claim at all, but rather whether injunctive relief was one type of relief which the plaintiffs and the class might pursue. *See id.* ("Consequently, although [plaintiffs] could not personally obtain injunctive relief, they certainly have standing to maintain their suit."). Because the UDTPA does not support a claim based on damages, Camasta must have standing to pursue injunctive relief to survive the motion to dismiss. He, however, has not established that he personally will likely suffer future harm based on JAB's actions. He, therefore, lacks standing to pursue Count II.

12

## CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiff Camasta's complaint in its entirety, without prejudice. The Court grants Camasta leave to file an amended complaint on or before March 1, 2013.

**Dated: February 7 , 2013**

                                    **ENTERED**

                                    **AMY J. ST. EVE**
                                    **United States District Judge**