## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK EDWARD CAMASTA, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Case No. 12 C 7782 |
| v. | ) ) | |
| | ) | |
| JOS. A. BANK CLOTHIERS, INC., a/k/a JOS. A. BANK, | ) ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

After dismissing Plaintiff Patrick Edward Camasta's ("Camasta") original complaint without prejudice on February 7, 2013, the Court granted Camasta leave to file an amended complaint.[1]  On March 1, 2013, Camasta filed a First Amended Class Action Complaint on behalf of himself and similarly situated Illinois consumers alleging that Defendant Jos. A. Bank Clothiers, Inc.'s ("JAB") violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*., in relation to certain sales practices.  On March 22, 2013, JAB filed a motion to dismiss Camasta's First Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), which is presently before the Court.  For the following reasons, the Court grants JAB's motion and dismisses this lawsuit in its entirety.  *See Agnew v. National Collegiate Athletic Ass'n* , 683 F.3d 328, 347 (7th Cir. 2012).

---

[1]  The Court presumes familiarity with its February 7, 2013, Memorandum, Opinion, and Order.

**LEGAL STANDARDS**

## I.     Federal Rule of Civil Procedure 12(b)(6)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).  "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

## II.     Federal Rule of Civil Procedure 9(b)

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2).  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).  Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud.  *See* Fed. R. Civ. P.

9(b); *Pirelli*, 631 F.3d at 441-42; *see also Iqbal,* 556 U.S. at 686.  This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted); *see also Cincinnati Life Ins. Co. v. Beyrer*, ___ F.3d. ___, 2013 WL 3379344, at *6 (7th Cir. July 8, 2013).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see also Iqbal,* 556 U.S. at 686.  "[T]he particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli,* 631 F.3d at 441 (citation omitted).  In sum, "[h]eightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442.

## BACKGROUND

On July 27, 2012, Camasta went to JAB's retail store in Deer Park, Illinois.  (R. 36, First Am. Compl. ¶ 11.)  While at the store, Camasta saw an advertisement publicizing "sales prices." (*Id*. ¶ 12.)  Believing that certain items were on sale, Camasta purchased six shirts paying a total of $167.00 before sales tax.  (*Id*. ¶¶ 12, 13, Ex. 1, 7/27/12 Receipt.)  More specifically, Camasta bought one shirt for $87.50 and received two additional shirts as part of the sale for $0.00 each and paid $79.50 for another shirt and received two more shirts for $0.00 each  (*Id*. ¶ 12, Ex. 1, 7/27/12 Receipt.)[2]

---

[2]  When allegations in a complaint are contradicted by a written exhibit attached to the complaint, the exhibit trumps the allegations.  *See Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.").

At some point after the purchase, Camasta learned that the "sale" was not a temporary price reduction. (*Id.* ¶ 15.) Instead, Camasta maintains that JAB follows a sales practice of advertising the normal retail price as a temporary price reduction at all of its 31 retail locations in Illinois. (*Id.* ¶¶ 13, 20.) Camasta further alleges that JAB implements this sales technique via "print, radio, television, direct mail, email and in store displays" which advertises the same "sales" to all Illinois consumers, "generating approximately $50,000,000 of Defendant's net sales for fiscal year 2011 on an average basis." (*Id.* ¶¶ 20-22.) Camasta further asserts that had he known that the advertised "sale" price was actually the normal retail price, he "would not have been induced to purchase, could have purchased for less than the amount paid, or could have gone to another retail store for a true 'sale' price of a comparable item, or shopped around and obtained a better price in the marketplace." (*Id.* ¶ 43.)

## ANALYSIS

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002)). "The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

While the ICFA declares unlawful "all unfair or deceptive acts or practices . . . in the conduct of any trade or business" regardless of actual injury, it sets a higher standard for private

parties like Camasta who "must show 'actual damage' in order to maintain an action under the ICFA." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing 815 ILCS 505/10a); *see also Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359, 373, 231 Ill. Dec. 80, 695 N.E.2d 853 (Ill. 1998) ("section 10a(a) of the Act, which governs private causes of action under the statute, mandates that an individual's damages be 'a result of a violation of [the] Act.'").

## I.     Sufficiency of the Allegations Under Federal Rule of Civil Procedure 9(b)

As the Court discussed in its February 7, 2013, Memorandum, Opinion, and Order, complaints arising from fraudulent activity under the ICFA — as in this case — are subject to the same particularity and specificity rules as claims for common law fraud because Camasta alleges that JAB's conduct amounted to a "fraudulent sales technique."  (First Am. Compl. ¶¶ 23, 45.)  The Court thus turns to whether Camasta has sufficiently alleged his ICFA claim under Rule 9(b).  *See Pirelli*, 631 F.3d at 441 ("When a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies.").

In his First Amended Class Action Complaint, Camasta alleges that he was "induced" to purchase shirts under "misleading" and "fraudulent sales practices" that violated the ICFA. (First Am. Compl. ¶¶ 12-16, 23, 45.)  Despite the Court discussing the necessity of the heightened pleading standard under the circumstances of this case in its February 7, 2013, Memorandum, Opinion, and Order, Camasta merely argues that he has pleaded the "who, what, when, where, and how" of this matter without any analysis or explanation of how he fulfilled Rule 9(b)'s requirements.  Further, although Camasta alleges that while he was at the Deer Park store, he saw an advertisement that said "sale prices," Camasta has failed to identify the content of the advertisement or the manner in which he "learned that the 'sale' was not a temporary price

reduction." (*See id.* ¶¶ 12, 15.) Furthermore, Camasta did not state with particularity his claims relating to JAB's "pattern and practice of advertising" to Illinois consumers. (*See id.* ¶¶ 15, 24.) Instead, Camasta only presents a conclusory statement along with a list of JAB's purported sales for two years. (*See id.* ¶ 16.) These allegations fail to give any context to the alleged "fraudulent sales practices" as required under Rule 9(b). In fact, Camasta's bare-boned statements are not sufficient even under the federal notice pleading standard pursuant to Rule 8(a)(2). *See Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Yeftich v. Navistar, Inc.,* ___ F.3d ___, 2013 WL 2992163, at *2 (7th Cir. June 18, 2013) (courts need not accept as true unsupported conclusory factual allegations).

Camasta also alleges that in September 2004, JAB entered into an Assurance of Discontinuance ("Assurance") with the State of New York based on New York's Deceptive Business Practices & False Advertising, General Business Law §§ 349, 350 and 16 C.F.R. § 233 concerning certain JAB sales practices. (First, Am. Compl. ¶¶ 16-18; R. 45, Resp. Brief, at 10.) Camasta maintains that this Assurance put JAB on notice that its pricing and sales practices were wrongful acts. First, the Assurance does not specifically indicate that the sales practice at issue in this lawsuit is prohibited. (Am. Compl, Ex. 2, 2004 Assurance.) Second, Camasta does not explain how JAB's pre-2004 advertising practices in New York are the same or similar to JAB's 2009-12 sales practices in Illinois. As such, Camasta's allegations concerning the 2004 New York Assurance do not add any meaningful substance to his allegations.

The Court recognizes that the degree of particularity required under Rule 9(b) depends on the circumstances of a case, *see AnchorBank,* 649 F.3d at 615, but Camasta has failed to provide

any specific details in alleging his ICFA claim in his First Amended Class Action Complaint.

## II.     Sufficiency of Actual Damages Allegations

In its motion to dismiss, JAB contends that Camasta's ICFA claim fails because he continues to allege only his defeated expectations that do not amount to actual pecuniary harm as required for private causes of action under the ICFA. *See Kim,* 598 F.3d at 365 ("The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'"). As the Seventh Circuit teaches, in the "case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* (quoting *Mulligan v. QVC, Inc.,* 382 Ill.App.3d 620, 628, 321 Ill.Dec. 257, 888 N.E.2d 1190 (1st Dist. 2008)). In short, under the ICFA, "[a]ctual damages must be calculable" and "measured by the plaintiff's loss." *Morris v. Harvey Cycle &Camper, Inc.,* 392 Ill.App.3d 399, 402, 331 Ill.Dec. 819, 911 N.E.2d 1049 (1st Dist. 2009) (citation omitted). Thus, to survive JAB's motion to dismiss, Camasta must allege that he was deprived the benefit of the bargain because he paid more than the actual value of the shirts.

Here, the majority of Camasta's actual damages allegations are conclusory and rely on speculation that fail to satisfy the federal notice pleading requirements under Rule 8(a)(2).[3] *See Iqbal,* 556 U.S. at 678; *see also Petty v. Chrysler Corp.,* 343 Ill.App.3d 815, 823, 278 Ill.Dec. 714, 799 N.E.2d 432 (1st Dist. 2003) (ICFA "damages may not be predicated on mere speculation, hypothesis, conjecture or whim.") (citation and internal quotation marks omitted).

---

[3] Plaintiffs need not plead damages allegations with particularity. *See LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 922 (7th Cir. 1997).

Camasta alleges, for example, that but for the advertised and promoted sales price, he would not have bought the shirts. (Am. Compl. ¶ 14.) Similarly, Camasta asserts that JAB's "misconduct caused economic damages to Plaintiff and the other members of the Class, including the inducement to purchase an item as on 'sale' when in fact it was not on 'sale'." (*Id*. ¶ 42.) Further, Camasta contends that "[h]ad Plaintiff and the Class not been so mislead, they would have known the advertised 'sale' price was actually the normal retail price" and "[w]ith this knowledge Plaintiff and the Class would not have been induced to purchase, could have purchased for less than the amount paid, or could have gone to another retail store for a true 'sale' price of a comparable item, or shopped around and obtained a better price in the marketplace." (*Id*. ¶ 43.) Not only are these statements speculative and conclusory, they fail to sufficiently allege that Camasta paid more than the value of the shirts that he purchased on July 27, 2012. *See Kim,* 598 F.3d at 365; *Mulligan,* 382 Ill.App.3d at 627.

Camasta's specific allegations fare no better. Viewing his allegations and all reasonable inferences in Camasta's favor, his allegations and attachments reveal that he paid $167.00, excluding tax, for two shirts — one cost $87.50 and one cost $79.50. (*Id*. ¶¶ 12, 13, Ex. 1, 7/27/12 Receipt.) The receipt of his JAB purchase indicates that in addition to the two shirts costing $87.50 and $79.50, Camasta bought four additional shirts for $0.00 each as part of the sale. (Ex. 1, 7/27/12 receipt.) In other words, the July 27, 2012 receipt and Camasta's allegations indicate that he got a total of six shirts — three for $29.16 and three for $26.50. (Am. Compl. ¶ 15.) Based on these allegations, Camasta maintains that he paid $87.50 for a shirt worth $29.16 and $79.50 for a shirt worth $26.50, and thus he paid more than the value of the shirts. Camasta's allegations and arguments, however, do not show that he paid more than

8

the value of the shirts because he merely guesses that the shirts are worth $29.16 and $26.50.

*See Kim,* 598 F.3d at 365; *see also Iqbal,* 556 U.S. at 678. Equally important, much of

Camasta's analysis does not take into consideration that he bought six shirts on July 27, 2012,

not just two. Meanwhile, Camasta's attempt to explain his actual damages by providing a chart

in his Response Brief fails to support his argument because, at best, the chart shows that Camasta

did not receive the discount he expected, not that he paid more than the value of the shirts. (R.

45, Resp. Brief, at 3.)

Accordingly, Camasta has failed to sufficiently allege actual damages as required under

the ICFA, therefore, the Court grants JAB's motion to dismiss. Because the Court granted

Camasta leave to file a First Amended Complaint to correct the errors in his previous allegations

— yet Plaintiff failed to do so and made no attempt to address Rule 9(b)'s requirements — the

Court dismisses Plaintiff's First Amended Complaint with prejudice. *See Agnew v. National*

*Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012).

## III. Injunctive Relief

On a final note, Plaintiff has not sufficiently alleged facts entitling him to injunctive

relief under the ICFA because he has failed to sufficiently alleged his ICFA claim in the first

instance. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,* 76 F.Supp.2d 868, 873 (N.D. Ill.

1999) (plaintiff not entitled to injunctive relief absent a showing of ICFA violation and resultant

actual damages); *see also Smith v. Prime Cable of Chicago,* 276 Ill.App.3d 843, 859, 213

Ill.Dec. 304, 658 N.E.2d 1325 (1st Dist. 1995) (same); *see, e.g., Chicago's Pizza, Inc. v.*

*Chicago's Pizza Franchise Ltd. USA,* 384 Ill.App.3d 849, 869, 323 Ill.Dec. 507, 893 N.E.2d 981

(1st Dist. 2008). Therefore, Camasta's claim for injunctive relief fails.

## CONCLUSION

For the foregoing reasons, the Court grants JAB's motion to dismiss with prejudice and dismisses this lawsuit in its entirety.

**Dated:** July 25, 2013

**ENTERED**

**AMY J. ST. EVE**
**United States District Judge**